965 P.2d 816

**In the Interest of John Doe, a Child under 18 Years of Age.**

**John DOE, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 23692.**

Supreme Court of Idaho,
Boise, May 1998 Term.

Aug. 25, 1998.

Curtis N. Holmes, Pocatello, for appellant.

Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

SCHROEDER, Justice.

This is an appeal from the district judge's ruling affirming the magistrate's denial of John Doe's motion to suppress evidence found during a search.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

On December 9, 1995, the Cedar Canyon Hunting Club (the Hunting Club) was burglarized. The police found evidence implicating John Doe in the burglary, and two police officers went to Doe's home to question him. Doe resides with his parents on a dairy farm. No one answered the door at the home, so one of the officers walked to the area of a shop located forty to fifty feet away from the house. According to testimony accepted by the magistrate, the officer saw a pickup truck through open shop doors matching the description of the truck thought to be involved in the burglary and the same type of shotgun shells that were stolen from the Hunting Club.

The officer spoke with Doe's father and asked permission to enter the shop. The magistrate found that Doe's father gave the officer permission to enter the shop. Upon entering the shop the officer confirmed that the boxes of shotgun shells were from the Hunting Club because the prices were marked on the boxes with distinctive blue ink. The police obtained a search warrant for the shop. Doe filed a motion to suppress, arguing that the search was illegal under the Fourth Amendment of the U.S. Constitution and Art. I, § 17 of the Idaho Constitution, and that the evidence obtained during the illegal search should not have been used to furnish probable cause in obtaining the search warrant. Doe makes no argument that there is any distinction between the treatment of issues under the Fourth Amendment and Art. I, § 17.

The magistrate denied the motion to suppress, holding that a search did not occur when the officer looked into the shop and that the officer legally discovered the truck and the shotgun shells without entering the shop under the "open view doctrine." The magistrate also held that the officer legally entered the shop after obtaining consent from its owner, Doe's father. The district judge affirmed the magistrate's holding, but determined that statements by Doe were secured improperly. The district judge's determination as to the statements has not been raised as an issue in this appeal by the State.

Doe challenges both the legal and factual findings of the magistrate, arguing that: (1) the evidence in the shop was not in open view, (2) the shop was within the curtilage of the home and, therefore, the officer should not have been there, (3) Doe's father did not give the officer consent to enter the shop, and (4) even if Doe's father gave consent, he did not give it knowingly and voluntarily. Doe also argues that the district judge erred in not excluding "certain evidence and testimony" prior to remand. However, this Court cannot discern what evidence and testimony is intended to be covered by this statement and will not address the issue.

As a threshold issue the State asserts that the Court is without jurisdiction to hear the appeal since the notice of appeal was filed forty-three days following the filing date shown on the district judge's order from which this appeal is taken. This issue has been addressed by the Court by its order

reinstating the appeal following a conditional order dismissing the appeal. The record before the Court does not show mailing by the clerk of the order from which the appeal has been taken as required by Rule 77(d) of the Idaho Rules of Civil Procedure, or actual knowledge of the correct filing date by the appellant. Consequently, the Court will hear the appeal.

## II.

## STANDARD OF REVIEW

■ On appeal from a magistrate's decision, the Court gives due regard to the district judge's determination, but does not focus upon the analysis by the district judge acting in the appellate capacity. The Court reviews the record before the magistrate independently of the district judge's determination. *State v. Clark,* 124 Idaho 308, 311, 859 P.2d 344, 347 (Ct.App.1993).

■ On a denial of a motion to suppress this Court will overturn a trial court's factual findings only if they are clearly erroneous. *State v. Peightal,* 122 Idaho 5, 7, 830 P.2d 516, 518 (1992). However, this Court exercises free review over questions of law, including whether the trial court correctly applied the law to the facts. *State v. Weber,* 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989).

## III.

**THE DECISION OF THE MAGISTRATE IS AFFIRMED FOR THE REASONS THAT 1) DOE HAS FAILED TO PROVIDE AN ADEQUATE RECORD UPON WHICH ERROR CAN BE FOUND, AND 2) THE FACTUAL FINDINGS OF THE MAGISTRATE ARE NOT CLEARLY ERRONEOUS.**

### A. The Record

■ Doe argues that the shotgun shells and the truck were discovered illegally and that the evidence that was seized as a result of the search warrant should be suppressed. The record before this Court does not include the affidavit in support of the warrant, the warrant, the return of the warrant, or a listing of the evidence that Doe claims should have been suppressed. Without the affidavit this Court is unable to know whether the shotgun shells and the truck were the only means of providing probable cause to issue a search warrant.

> When tainted evidence has been relied upon for the issuance of a warrant, an appellate court must determine whether the remaining information presented to the magistrate, after the tainted evidence is excluded, contains adequate facts from which the magistrate could have concluded that probable cause existed for issuance of the search warrant.

*State v. Cada,* 129 Idaho 224, 228, 923 P.2d 469, 473 (Ct.App.1996) (citing *State v. Johnson,* 110 Idaho 516, 526, 716 P.2d 1288, 1298 (1986)). In this case the search warrant might have been issued based on other legally obtained evidence. The record is inadequate to conclude that the search warrant was obtained by the use of illegally observed or seized evidence. Additionally, this Court has no record of what evidence would be suppressed if Doe's claim were upheld.

In view of the fact that further proceedings will take place before the magistrate, the Court will address the remaining issues.

### B. The Magistrate's Findings

Doe argues that the search of the shop was illegal because it was within the home's curtilage which includes the area of buildings immediately adjacent to a home which a reasonable person may expect to remain private even though it is accessible to the public. *Cada,* 129 Idaho at 232, 923 P.2d at 477; *State v. Rigoulot,* 123 Idaho 267, 272, 846 P.2d 918, 923 (Ct.App.1992).

■ The magistrate held that the officer's initial discovery of the truck and the shotgun shells did not constitute a search because the evidence was in open view. Under the "open view doctrine" a police officer's "mere observation from a vantage point that does not infringe upon a privacy interest ... normally implicates no Fourth Amendment constraints because observation of items readily visible to the public is not a 'search.'" *Clark,* 124 Idaho at 312, 859 P.2d at 348.

"[W]hat is seen in open view may furnish probable cause for obtaining a warrant." *Id.* at 313 n. 3, 859 P.2d at 349 n. 3.

In *Clark*, the Court of Appeals held that the open view doctrine applied when a police officer, while walking along the access route to the front door of a mobile home, looked through the window of the mobile home and observed the defendants using controlled substances.

> [T]he presence of a police officer within the curtilage does not, *ipso facto*, result in an unconstitutional intrusion. There is an implied invitation for the public to use access routes to the house, such as parking areas, driveways, sidewalks, or pathways to the entry, and there can be no reasonable expectation of privacy as to observations which can be made from such areas. Like other citizens, police with legitimate business are entitled to enter areas of the curtilage that are impliedly open to public use.

*Id.* at 313, 859 P.2d at 349. The magistrate found that this case was factually similar to *Clark*, noting that

> it's reasonable to expect that if somebody comes to your door and there's lights on in the building and its a dairy barn, that you'd go out and look in those other areas. Especially at the time of night that we're looking at. If you are trying to find somebody there, that would be a reasonable place to look for them. It would be reasonable to expect that a person would do that.

A criminal investigation is a legitimate societal purpose. *Rigoulot*, 123 Idaho at 272, 846 P.2d at 923. "[W]hen the police come onto private property to conduct an investigation ... and restrict their movements to places ordinary visitors could be expected to go, observations made from such vantage points are not covered by the Fourth Amendment." *Id.* After finding no one in the home, it was reasonable for the officer to look for Doe in the shop, especially when the area was well lit. The Does live on a dairy farm, and it is reasonable to conclude that the occupants could be found working somewhere on the property.

Next, Doe contends that the shop was too dark for the officer to have seen the shogun shells. Doe's father, however, testified that the doors of the shop were open "about 16 feet" and that the shop was lit by mercury vapor lights. Furthermore, Doe's father testified that it would have been possible to see the boxes of shotgun shells but not their contents. The only evidence Doe offers to support his contention that the findings were erroneous is the officer's testimony that he used a flashlight when he entered the shop with Doe's father:

> Officer: At this point I'm now using the flashlight to go through things.
>
> Q: Okay. Because you can't see past a certain point?
>
> Officer: That's correct. There's only so much light's [sic] going to be allowed through there.

The fact that the officer used a flashlight once inside the shop does not demonstrate that he was unable to see the truck or the shotgun shells when he was outside of the shop. Doe has failed to show that the magistrate's findings were clearly erroneous.

Doe also argues that the following testimony by the officer suggests that he did not see the evidence without first entering the shop:

> Q: At what point—were you standing there or were you walking by when you saw the one-ton [truck] and the shells?
>
> Officer: I was just starting to walk past the shop. I was going to yell into the shop to see if anybody was in there. That was my intention when I first headed into the shop.
>
> Q: Okay. And then what stopped you from doing that?
>
> Officer: When I seen the one-ton.
>
> Q: Okay. And then what? What did you do?
>
> Officer: From there I seen the shells.

Doe contends that because the officer stated that he "headed into the shop" he must have entered the shop, rather than first seeing the evidence in open view from outside the shop. However, the attorney then asked the officer, "What stopped you from doing that?" This statement suggests that the officer did not

enter the shop. The findings of the magistrate were not clearly erroneous.

Finally, Doe contends that the magistrate's finding that his father had given the officer consent to enter and search the shop is erroneous. "Consent is an established exception to the warrant and probable cause requirements. The state must show that the consent was free and voluntary and not a result of duress or coercion, either direct or implied." *State v. Whiteley,* 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct.App. 1993) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Doe first argues that his father did not give the officer consent to search the shop. Next, he argues that even if his father gave the officer consent to search the shop, the consent was not knowing and voluntary but was obtained by misrepresentation. He claims that the officer gave his father the impression that he had already been inside the shop and had seen the shotgun shells. Furthermore, both Doe's father and Doe's sister testified that the officer had told them that he had a warrant to arrest Doe. However, there is substantial, competent evidence supporting the magistrate's finding that Doe's father had given his consent to search the shop, and that his father's consent was free and voluntary. The finding is not clearly erroneous.

## IV.

## CONCLUSION

The decision of the magistrate denying Doe's motion to suppress evidence found during the search is affirmed.

TROUT, C.J., and JOHNSON, SILAK and WALTERS, JJ., concur.